NOT FOR PUBLICATION

RECEIVED DEC 21 2012 AT 8:30 WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. RITACCO,<br>FRANCIS X. GARTLAND, and<br>FRANK D'ALONZO,<br><br>Defendants. | Criminal Action Nos. 10-cr-00713, 10-cr-00697,<br>11-cr-336, 12-cr-220 (JAP)<br><br>OPINION |

PISANO, District Judge

Presently before the Court is the question of the amount of restitution and forfeiture to be paid by Defendants Michael J. Ritacco ("Ritacco"), Francis X. Gartland ("Gartland"), and Frank D'Alonzo ("D'Alonzo"). This Court, having heard oral argument on December 12, 2012 and having reviewed the parties' briefs, finds that the Government has demonstrated by a preponderance of the evidence the amount of the Toms River School District's loss and the amount of criminal proceeds. As a result, Ritacco, Gartland, and D'Alonzo are required to pay the restitution and forfeiture amounts outlined in the Government's brief. Therefore, Ritacco and Gartland are jointly and severally liable for the total amount of restitution — $4,336,987.91; D'Alonzo is liable for a portion of the total amount of restitution — $1,625,952.79; Gartland is

1

required to forfeit $11,880,233.44; and D'Alonzo is required to forfeit $4,317,111.40, which Gartland is jointly and severally liable for.[1]

## I. BACKGROUND

For at least eight years (2002 to 2010), Defendants Ritacco, Gartland, and D'Alonzo[2] engaged in a scheme to defraud the Toms River School District of its superintendent, Ritacco's, honest services through bribes and kickbacks involving insurance contracts.[3]

## II. DISCUSSION

### A. Restitution

The Mandatory Victims Restitution Act ("MVRA") requires the Court to "order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ." 18 U.S.C. § 3663A(a)(1). A "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). This definition includes "public institutions that receive government funding," like the Toms River School District. *United States v. Bryant*, 655 F.3d 232, 253 (3d Cir. 2011).

---

[1] Pursuant to his plea agreement, Ritacco has already forfeited $1 million, a 2010 Mercedes Benz, and $8,950 in cash.

[2] D'Alonzo was involved in the scheme from approximately 2002 to 2006.

[3] Refer to the record, including the pre-sentence reports, plea colloquies, and sentencing transcripts, for necessary background.

2

The Court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The "proper amount of restitution is the amount wrongfully taken by the defendant." *Bryant*, 655 F.3d at 254. If the victim's loss is at issue, the Government has the "burden of demonstrating the amount of loss sustained by a victim as a result of the offense" by a preponderance of the evidence. 18 U.S.C. § 3664(e). The fact that a victim has received or is entitled to receive compensation from a third party, like an insurance company, has no bearing on restitution. 18 U.S.C. § 3664(f)(1)(B).

Here, the victim of Defendants' scheme is unquestionably the Toms River School District, and the Government demonstrated the amount of the School District's loss by a preponderance of the evidence. The Government established that the victim's loss is based on health insurance brokerage commissions and excess funds from the worker's compensation program. Ritacco increased the health insurance brokerage commissions paid to Gartland's entities by one percent (1%) without the knowledge or approval of the School District; after Gartland and his entities received the commissions, Ritacco, Gartland, and D'Alonzo divided the proceeds among themselves. The Government demonstrated by a preponderance of the evidence that the victim's total loss regarding the health insurance commissions from 2003 to 2008 was $909,607. Moreover, the victim's loss is comprised of excess worker's compensation funds that Ritacco, Gartland, and D'Alonzo obtained by inflating the contract fees for the worker's compensation program and sharing the proceeds. The Government established by a preponderance of the evidence that the School District's loss regarding worker's compensation was $3,183,048.91. Adding prejudgment interest in the amount of $244,332, which reflects a reasonable interest rate of 5.97%, to the amounts above, the Government has demonstrated by a

preponderance of the evidence that the School District's total loss is $4,336,987.91. *See United States v. Fumo*, 655 F.3d 288, 320–22 (3d Cir. 2011). Consequently, the School District is entitled to restitution in the amount of $4,336,987.91.

Although Ritacco argued that Count 1 in the Superseding Indictment is limited to the worker's compensation contracts and not health insurance brokerage fees, this is inaccurate. Count 1 charges Ritacco and Gartland with a "scheme to defraud [the] public of Ritacco's honest services by Gartland and others giving concealed bribes and kickbacks for the direct and indirect benefit of Ritacco." This scheme involves both health insurance brokerage contracts and worker's compensation contracts. In addition, restitution is not limited to the monetary amount of bribes listed in the Indictment. *See United States v. Michelson*, 2012 WL 1079626, *4 (D.N.J. Mar. 30, 2012), *aff'd*, 2012 WL 5861715 (3d Cir. Nov. 20, 2012).

Therefore, because the Government established the amount of the School District's losses by a preponderance of the evidence, the School District is entitled to the total amount of restitution — $4,336,987.91. Ritacco and Gartland are jointly and severally liable for this amount. D'Alonzo, however, is liable for only a portion of the total amount of restitution — $1,625,925.79 — because he was only involved in the scheme from approximately 2002 to 2006.

### B.    Forfeiture

"Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' . . . or a conspiracy to commit such offense" is forfeitable to the United States. 18 U.S.C. § 981(a)(1)(C). "Specified unlawful activity" includes mail fraud, 18 U.S.C. § 1341, and bribery, 18 U.S.C. § 666. 18 U.S.C. §§ 1956(c)(7)(A), (D), 1961(1). "Proceeds" is defined as "property of any kind obtained directly or

indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). Although 18 U.S.C. § 981 discusses civil forfeiture, it is applicable to criminal forfeiture under 28 U.S.C. § 2461(c).

"[A]n *in personam* forfeiture judgment may be entered for the full amount of the criminal proceeds." *United States v. Vampire Nation*, 451 F.3d 189, 201–02 (3d Cir. 2006). A forfeiture judgment for the full amount of criminal proceeds is appropriate "even where the amount of the judgment exceeds the defendant's available assets at the time of conviction." *Id.* at 203. Thus, forfeiture, which concerns criminal proceeds and "seeks to disgorge any profits that the offender realized from criminal activity," serves a different purpose than restitution, which concerns the victim's loss. *United States v. Plaskett*, 355 Fed. Appx. 639, 644 (3d Cir. 2009). The government must demonstrate the amount of criminal proceeds by a preponderance of the evidence. *See United States v. Leahy*, 438 F.3d 328, 331–33 (3d Cir. 2006); *Plaskett*, 355 Fed. Appx. at 644.

Here, the Government demonstrated Defendants' criminal proceeds by a preponderance of the evidence.[4] The Government established that the criminal proceeds obtained through the scheme consisted of brokerage commissions from the School District's health insurance contracts and excess premium payments on the worker's compensation contracts. The Government established by a preponderance of the evidence that the total amount of brokerage commissions paid from the 2003/2004 school year to the 2009/2010 school year was

---

[4] Defendants Gartland and D'Alonzo agreed in their plea agreements to forfeit "all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the" scheme. Ritacco previously forfeited $1 million, a 2010 Mercedes Benz, and $8,950 in cash prior to his sentencing.

5

$7,877,184.53.[5] Additionally, it established by a preponderance of the evidence that the proceeds from the excess worker's compensation funds, including the administration fee paid to Gartland each year, was $4,003,048.91. Thus, the Government demonstrated by a preponderance of the evidence that the total amount of criminal proceeds subject to forfeiture is $11,880,233.44. Gartland is liable for this full forfeiture amount because he was involved in the scheme from approximately 2002 to 2010, and D'Alonzo is liable for a portion of the criminal proceeds — $4,317,111.40 — because he was involved in the scheme from only approximately 2002 to 2006. Gartland is jointly and severally liable for the forfeiture amount due from D'Alonzo.

### III. CONCLUSION

For the reasons set forth above, Ritacco and Gartland are jointly and severally liable for the total amount of restitution — $4,336,987.91; D'Alonzo is liable for a portion of the total amount of restitution — $1,625,952.79; Gartland is required to forfeit $11,880,233.44; and D'Alonzo is required to forfeit $4,317,111.40. The Government has demonstrated the victim's loss, which is necessary to establish restitution, and the criminal proceeds, which are necessary to establish forfeiture, by a preponderance of the evidence.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: December 17, 2012

---

[5] This number, as well as the others listed in this Opinion, is a conservative measure of the criminal proceeds because although the Government's data here begins in 2003, Ritacco and Gartland's scheme began as early as 1998. Therefore, the actual amount of criminal proceeds and the victim's loss are surely higher; however, the Court is unable to ascertain the restitution due for those earlier years of the scheme.